Your Honor, if I may, I would like to reserve two minutes of my time for rebuttal. May it please the Court, my name is Barry Joyner, and I represent the Director of the Office of Workers' Compensation Programs. The issue before the Court in this case is whether or not the Department of Labor's Longshore Program regulations actually mean what they say. Section 702.321 of the Department's regulations provide that in a hearing loss case where an employer is seeking second injury relief under Section 8F of the Longshore Act, that they must demonstrate a preexisting hearing loss in the employee by means of a hearing test that meets certain requirements, one of which is that the test was given and the test results were provided to the employee. Nonetheless, the Benefits Review Board has held in this case and in another case called Harris, that an employer may obtain relief even if it does not have a test that was provided to the employee. The Board's decision was wrong for three reasons. First, it is contrary to the plain language of the regulation. The regulation says that in order to establish a preexisting hearing loss, the test must comply with the requirements of 702.441, one of which is that the test be provided to the employee. But it seems to me that 20 CFR 702.441B doesn't say anything. It's got to say do that. It says it shall be presumptive evidence of the amount of hearing loss. That is correct. That's what 702.441 says. However, 702.321 says that the test must meet the requirements of 702.441. While a hearing test may be presumptive evidence under 702.441 for the purpose of determining whether or not a claimant has a compensable claim, 702.321, by its mandatory language, makes clear that the test must meet those requirements. Okay, and you're referring to the language, if the injury is loss of hearing, the preexisting hearing loss must be documented by an audiogram which complies with the requirements of section 702.441. That is correct, Your Honor. Okay, so if that doesn't say anything about, or I guess maybe you're reading it in, that doesn't say anything about providing it to the injured person. That's right. That language is not in 702.321. That language is in 702.441. 702.441 establishes certain standards for an audiogram to be, quote, unquote, presumptive evidence. The test has to be done at a certain time. It has to be done by a qualified physician or technician. It has to state its results in accordance with the standards set by the AMA for hearing loss. And it has to be, the results have to be provided to the employee. So the way the statute works is that to be eligible for 8F compensation, you must document the hearing loss with an audiogram that meets the requirements of presumptive evidence. That is correct, Your Honor. That is the department's view of what the language of 702.321 requires in order for an employer to get 8F relief. Well, it seems to me that what you're reading into this requirement is, there's no question it says that if the injury is a loss of hearing, the preexisting loss must be documented. But I guess what you're suggesting is that you're only documenting the parts of 441B that are after the, if you will, presumptive paragraph, which is the audiogram must be presumptive evidence. Yes, Your Honor. I mean, I guess I'm trying to figure out what's your best matter of statutory interpretation that would suggest that what you want us to buy is 321A1 operates on its own but incorporates only the requirements 1 through 2, 3, but not the first paragraph of B. Your Honor, what the requirements are in 702.441, I think, are different from the statement of being presumptive evidence. 702.441's discussion of being presumptive evidence is not, I don't think, a requirement. That is, it's not a mandatory part of the regulation in terms of how the tests are looked at in every circumstance. It's certainly true that 441 establishes sort of permissive or optional standards for an employee who is attempting to establish that he has a hearing loss. He can establish a loss of hearing even if the test does not meet those requirements. However, 702.321, by saying that a test must meet those requirements, makes those requirements mandatory for ADAF relief. Even if there is a question, however, as to what the language of the regulation itself means, the director's interpretation of his own regulation is entitled to controlling deference under the Supreme Court's decision in Auer and this Court's decision in Basiri v. Xerox. Are you challenging in any way the accuracy of the audiograms? No, Your Honor. There's no question there was a hearing loss and you agree with that? That's correct, Your Honor. There's no question that Mr. Kunihiro, the employee, had a very significant hearing loss and that he was entitled to compensation for that loss. There is no question about that. So the purpose of these audiograms in a case where it's the second employer is to establish how much responsibility the second employer has vis-à-vis the first employer, vis-à-vis the workers' compensation system? That's correct, Your Honor. In a second injury case, whether it's hearing loss or not, an employer must establish that there had been a pre-existing injury and the employer is then responsible for only a portion of the total compensation owed. In the case of hearing loss, which is a bit different from any other type of injury under the Act, the employer's liability is limited to the lesser of 104 weeks or the amount of hearing loss that's attributable to the most recent injury, the most recent amount of hearing loss that the employee suffered. The Benefits Review Board, in this case, Your Honors, decided that its own interpretation of the regulation was more reasonable than the Director's. However, in doing so, the Board simply failed to follow what the law of deference is. These regulations were promulgated by the Director, and the Director is the one who is entitled to deference. Well, if you read Harris, you see why they didn't give the Director deference. If you read Harris at 42, BRBS at 2, the Board lays right out why the Director didn't get deference. How do you argue against their analysis? I mean, what they're saying is this regulation had been in existence for 22 years when the Director first espoused his opinion. As the Board previously noted, the Director has never raised the issue before, despite there having been a large number of Section 8 hearing loss cases. That's actually incorrect, Your Honors. We note in our reply brief the Director has brought up this issue since at least 1993 in a case, a Board case called Skelton, in which we argued that a test which was not given to an employee could not be used to establish a preexisting hearing loss. And the Board said we didn't prove that the employer had not disclosed the audiogram. So we've actually been making this argument for quite a while. I would point out that there are a lot of these cases where employers, in fact, give the results of these tests, so there's no question about whether or not the employer is entitled to ADEF relief. Also, in a lot of hearing loss cases, the amount of money makes a case simply not a proper vehicle for appeal. In this case, we're talking about $100,000 worth of approximately of benefits at issue. What is the purpose of the requirement in the regs that the hearing test be given to the employee? The purpose of the requirement to be given to the employee is really threefold. One, it gives the employee prompt notice that he has been injured. One of the most important purposes of the Longshore Act is that employees receive compensation promptly when they are injured on the job. Second, and perhaps more importantly in this case, the requirement of providing the test to the employee allows him to take some sort of action to protect himself. If Mr. Kunihiro had been informed over the years, he could have taken steps to protect himself from the hearing. He might have even decided to go to a job where he was not going to be subject to such. What part of the statute are you relying upon for that second point? Of the employee being able to protect himself? Of the intent of Congress. The intent of Congress is in, I think it's in, throughout the statute as a whole, I would refer you to the First Circuit's decision in Bath Iron Works v. Reich, which was a discussion, and I believe also the Fourth Circuit's decision in Howard. Your Honor, my time is up.  Thank you. Thank you. Good morning, Your Honors. May it please the Court, Norman Leasy appearing on behalf of Respondents Maps and Terminals, Incorporated and Signal Mutual Indemnity Association, Limited. Your Honors, I believe that the Court's initial line of questioning regarding the language of the regulation at issue here strike at the fundamental issue that is before the Court, and that is that Section 702.441 and its provisions were never reasonably intended by either Congress in enacting the amendments in 1984 to the Longshore Act or the Secretary of the Department of Labor in promulgating the regulations as a result of those amendments to control the issue of the validity of an audiogram for the purposes of special fund relief. The key issues that have been raised, the arguments raised by the petitioner here, go to this question of a plain reading and the deference that is supposedly owed to the Director and the Secretary in interpreting their own regulations. Those two arguments, I would submit, somewhat blur together. With regard to the plain reading argument, the plain reading of a regulation is not controlling if either clearly expressed administrative intent is to the contrary of that reading or if that supposed plain meaning would lead to absurd results. This Court has set forth that exception in the safe air decision. With regard to that question of administrative intent, that is reflected in the published notices that accompany an agency's rulemaking process. That, in turn, Your Honor, I believe, melds with the issue of what Congress's intent was here. If I may step away for just a moment. And if I may read a brief quote from the Mead decision, because I think it is instructive here on this issue of the Court's, pardon me, on Congress's intention. The Supreme Court stated, again, in the Mead decision, that this Court in Chevron recognized that Congress not only engages in express delegation of specific interpretive authority, but that sometimes the legislative delegation to an agency on a particular question is implicit. Congress, that is, may not have expressly delegated authority or responsibility to implement a particular provision or to fill a particular gap. Yet, it can still be apparent from the agency's generally conferred authority for other statutory circumstances that Congress would expect the agency to be able to speak with the force of law. So, and I appreciate your argument here, and we've read this, but I guess it seems to me that what you would have me suggest is that the plain language of this statute, or of the C of R, section 702.321A1, is that it only incorporates the requirements of 702.441B1. I would argue, Your Honor, that that is the reasonable reading. Why didn't they just put 1 then? And that is a question, I believe, Your Honor, as to what... I mean, your argument is only one should apply because that's the only one, as I understand it, or it doesn't necessarily have to be that way because it's presumptive, but in any event, you're suggesting B1 is the only one that's a requirement. Your Honor, I believe that the requirement, as the Board stated, is simply that there be some evidence offered by the employer of the hearing loss that is probative of the claim. So we're really going outside of the exact language of this, if you will, CFR, where it says there must be documented by an auto-eogram which complies with the requirements, and what the Board has suggested is when it complies with the requirements, it's just got to have some evidence upon which to make a difference or make a decision. Is that what you're arguing? I would argue, Your Honor, that there has to be, it would be at the discretion of the administrative law judge to accept the evidence, but what the employer would be required to do is put on probative evidence of the hearing loss by way of an audiogram that meets the technical criteria, but that does not have to meet the very strict requirements of 702441 because the intention behind 702441, Your Honor, if you run the length of the legislative and rulemaking process, was that that provision was intended only to govern the notice and filing requirements with regards to claims filed by claimants. That is, the clock, if you will, begins to run on the notice and filing requirement only after the employee, the claimant, has been given a copy of the audiogram and an interpreting report. The purpose behind that was twofold, fairness to the employee or claimant so that they would know when their obligation arose to file their claim, but also fairness to the employer to avoid fraudulent claims and to avoid situations where claims would be stale. Let me ask you a question. So, Section 8F relief is only available where the employee has had a preexisting permanent partial disability, correct? Yes, Your Honor. Okay, and Mr. Kunihara went to work for your client in 1964? Yes, Your Honor. Okay, and the first test that he had, a hearing test, was October 3, 1978, and at that point he had 19.1% hearing loss. If you had provided that to him at that time, well, I guess let me ask it in other ways. Is there any evidence that he worked for anyone other than Mattson? Mr. Kunihara did work for another employer before he began his employment with Mattson. What kind of an employer? A place where he would be subject to hearing loss? I believe he was in the military and then had worked for another long-term provider. I guess my question is, what do we know about him in 1964 when he came to you? How do we know that he had a preexisting or didn't have a preexisting hearing loss? Well, Your Honor, for purposes of the inquiry here, it's not that baseline, that 1964 baseline that is relevant for AF purposes. For AF purposes, all an employer needs to show is that there was a manifest preexisting disability. Right, but how did you show that? How did we show that in this case, Your Honor? We showed that through the audiograms that were conducted as part of his work. Right, but he started working for you in 1964 and the first test was 12 years later. Yes, he had a, maybe I'm not being clear, Your Honor. For purposes of AF, it's not what hearing loss he had prior to the beginning of his employment with Mattson in this circumstance. The issue is what manifest hearing loss did he have that was measured prior to the audiogram that provides the basis for this claim? Well, which ones? Because by the time, by 2002, his hearing loss was almost 50%. That's correct. And he didn't know that he was gradually losing his hearing in this way? Your Honor, as has been indicated in the papers that were filed, during the course of Mr. Kunihiro's and other employees' testings, an audiologist was brought to the workplace, administered audiograms, and then after the audiograms were administered, while a copy of the audiogram itself and an interpreting report, as 702441 mentions, was not provided to the employees. A notice was given to the employees advising them that there had been a shift in their baseline, meaning there had been an increase in their hearing loss, and that they should consult with their own physician. So insofar as this argument has been forwarded by the director, and I believe that it is a red herring as to what the obligations are of Mattson, because certainly there is. I'm going beyond the plain reading. I'm looking at the overall purposes of the act, particularly with respect to the hearing loss documentation requirement. Correct. And under the act, there is no obligation. Certainly no obligation has been briefed. It seems, though, that the statutory scheme makes it an obligation if you want to get a reimbursement from the workers' compensation board. That is what the naked reading of the regulation states, Your Honor, yes. But again, going back and looking at the legislative process, the rulemaking process, there was absolutely no indication in any of that legislative history or the rulemaking history that there was ever any intention by either Congress or by the Secretary to impose the requirement that Petitioner now seeks to impose. The only discussion with regard to 702441 concerning the question of the requirement that a claim would be provided with a copy of the report, pardon me, a copy of the audiogram and the interpreting report, was to start the clock running for the notice and filing purposes. There is an absolute vacuum with regard to the issues that have been raised by the Petitioner here about notice in the context of validity of an 8F application or this idea that this is going to confer some benefit to claimants under these circumstances. Counselor, let me ask you, if I only look at 441B1, did the audiogram administered in this particular situation meet the requirements of that? Yes, Your Honor. It met the requirements that the audiogram was administered by a licensed or certified audiologist by a provision certified by the AB of all that big word or VA technician. It met that requirement. Your Honor, I believe the Petitioner actually conceded that issue. That's what I got the idea to. Okay. I would point out, and I think this is an appropriate time to do so, that that had been a long bone of contention, particularly in these cases. The actual validity of the criteria for the audiogram being met, and the Director for many years disputed that until Mattson came forward and repeatedly showed that the criteria had been faithfully met. And I think that goes hand-in-hand, Your Honor, with the point that was made, the footnote in the Harris decision, that if, in fact, this regulation had the effect that the Petitioner is saying it does and the import of that effect that the Petitioner is saying it does, why is the Petitioner able to only point to a single case in the last 22 years preceding this case where the issue was raised? And a careful reading of that Skelton case shows that the Petitioner didn't even offer up an argument based on this regulation. It was simply a discussion of whether or not the claimant had been provided with the audiogram. Thank you. All right.  Thank you, Your Honor. All right. This case will be submitted. EK versus the City and County of Honolulu is also submitted.
judges: Alarcon, Wardlaw, Smith N. R.